**CLIMAX MOLYBDENUM COMPANY, a division of Amax, Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1088.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 10, 1978.

Decided Sept. 20, 1978.

McKay, Circuit Judge, concurred in part and filed opinion.

William F. Schoeberlein (Charles W. Newcom, Denver, Colo., on the brief), of Dawson, Nagel, Sherman & Howard, Denver, Colo., of counsel; Daniel R. Hale, Denver, Colo., for petitioner.

Joseph P. Norelli, Washington, D. C. (Allison W. Brown, Jr., John S. Irving, John E. Higgins, Jr., Carl L. Taylor and Elliott Moore, Washington, D. C., on the brief), for respondent.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Climax Molybdenum Company (Climax) petitions for review of a decision of the National Labor Relations Board (NLRB) that Climax had violated § 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), by interfering with employees' exercise of § 7 rights, 29 U.S.C. § 157. Climax was ordered to cease and desist from refusing to allow a union representative to consult with or interview employees prior to investigatory interviews, which the employees reasonably believe will result in disciplinary action.

The facts are undisputed. In August of 1974, two Climax employees, Patrick Harrison and Max Salazar, became involved in an altercation while working in an underground mine. Upon learning of the fight, the employees' supervisor advised them that the matter would be investigated the next day. George Egglezos, acting vice president of the Oil, Chemical and Atomic Workers Union (Union), was advised by Climax that the investigatory meeting would be held but he was not informed of the names of the employees involved nor the nature of the altercation. Neither Harrison nor Salazar requested to consult with their Union representative. The following morning, upon arriving for work, Harrison and Salazar were notified by Climax that an investigatory interview would soon take place. Egglezos requested of Climax that he be permitted to hold a conference with the two employees on company time prior to the investigatory meeting. This request was denied by Climax. The record indicates that Climax officials knew nothing more about the altercation than did the Union representative.

At the commencement of the investigatory interview, which was attended by the two employees, Egglezos, two other Union officials, and by three Climax representatives, Egglezos advised Harrison and Salazar that they did not have to say anything. They were, however, willing to cooperate. Each, accordingly, related his version of the altercation.

Following the interview, Climax officials conferred. They agreed to give Harrison and Salazar only verbal warnings. The employees had been previously advised by Eg-

glezos that they could possibly be discharged. No grievances were filed by the employees as the result of the interview.

In September the Union filed unfair labor practice charges against Climax, charging that Climax had unlawfully threatened employees Harrison and Salazar with reprisals because of their involvement in protected concerted activity. The NLRB thereupon issued a complaint. A hearing was held before an administrative law judge. The law judge dismissed the complaint, holding that the Act does not require that a union representative be allowed to confer with an employee prior to the employee's investigatory interview. The law judge's decision was appealed. The NLRB, in a 3–2 decision, reversed, holding that Climax had violated § 8(a)(1) of the Act.

The issues presented on review are: (1) whether it is a violation of § 8(a)(1) to deny a union representative's request to meet with employees on company time prior to an initial investigatory meeting which the employees reasonably believe may lead to discipline, and (2) whether, even if there is a § 7 right of prior consultation, a violation can be found where the expressed purpose of the union representative in seeking prior consultation is to direct employees not to cooperate in the investigation of the job misconduct, thereby making investigation impossible.

## I.

■ Climax argues that its refusal to permit the Union representative to consult with employees Harrison and Salazar on company time prior to the investigatory interview was proper. We agree.

■ The touchstone for resolution of this dispute is a recent United States Supreme Court decision entitled *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). *Weingarten* is the sole authority relied upon by the NLRB in reaching its decision; furthermore, it is the primary authority urged by both Climax and the NLRB. In *Weingarten*, it was held that § 7 of the Act affords an employee the right to insist on the presence of a union representative at an investigatory interview with employer personnel which he reasonably believes will result in disciplinary action. There, an employee, who was being interrogated about thefts from her employer, asked for and was denied the presence of her union representative at the questioning session. The Supreme Court, in a divided opinion, held that this denial of representation *during* an investigatory interview violated the employee's rights as defined in § 7 of the Act; i. e., the right "to engage in concerted activities for mutual aid and/or protection." The Court agreed with the NLRB's position that § 7 creates a right in an employee to refuse to submit to an investigatory interview without union representation, within these "contours and limits":

> First, the right inheres in § 7's guarantee of the right of *employees* to act in concert for mutual aid and protection.
>
> \*     \*     \*     \*     \*     \*
>
> Second, *the right arises only in situations where the employee requests representation.* In other words, the employee may forgo his guaranteed right and, if he prefers, participate in an interview unaccompanied by his union representative. Third, the employee's right to request representation as a condition of participation in an interview is limited to situations where the employee reasonably believes the investigation will result in disciplinary action.
>
> \*     \*     \*     \*     \*     \*
>
> Fourth, *exercise of the right may not interfere with legitimate employer prerogatives.*
>
> \*     \*     \*     \*     \*     \*
>
> Fifth, the employer has no duty to bargain with any union representative who may be permitted to attend the investigatory interview. (Emphasis supplied.)

420 U.S., at 256–259, 95 S.Ct. at 963–965.

The message of *Weingarten* is clear. An employee who is requested to attend an investigatory interview is entitled to be accompanied by his union representative inas-

much as such activity is protected under § 7. *Weingarten* does not, however, mandate that a union representative must be present under any and all circumstances. The Court's adoption of the "contours and limits" of that right clearly support this position. In the instant case, the NLRB has enlarged upon the *Weingarten* holding to the extent that it includes pre-interview situations. We do not believe that *Weingarten* can be interpreted so broadly. Thus, we hold that *Weingarten* does not control here.

There are several factors which lead us to conclude that *Weingarten* cannot be construed to cover the situation presented here. First, the right recognized in *Weingarten* of *employees* to act in concert for their mutual aid and protection, through representation of a union official at the hearing, arises only upon request by the employees. At no time did Harrison and Salazar request that a union representative be present.

*Weingarten* holds that the *employee* must request representation. Neither Harrison nor Salazar manifested any interest in consulting with their union representative prior to the investigatory interview, notwithstanding a time lapse of 17½ hours between the time they were advised of the pending investigation and the time it took place. To hold that an employer must permit employees to consult with union representatives on company time, when the employees could have, but elected not to, consult with their union representatives on their own time is to place a harsh and unfair burden upon the employer. Harrison and Salazar were not in anywise impeded from apprising their union representative of any difficulties they may have envisioned and from requesting that the union representative accompany them to the interview. There is, in fact, no indication in this case that the employees were interested in seeking counsel from their union representative.

*Weingarten* also stands for the proposition that the right of union representation may not interfere with legitimate employer prerogatives. It is evident from the record here that prior consultation would have resulted in such interference. The primary function of an investigatory interview is to gather first-hand information, in order to ascertain what actually occurred and what, if any, discipline should be meted out to an employee. The employer's interest in conducting such an interview is compelled by a good business motive, i. e., that of conducting a smooth-running business operation. The interview is of special significance to an employer in the position of Climax. Safety is a key goal in any mining operation. Clearly, personal animosity existing between men involved in the dangerous activity of underground mining leading to physical altercation must be thoroughly investigated. Such an investigation must be handled in a setting of cooperation among the employees, employer and union. It should not be adversarial in nature. Even so, the record reflects that Egglezos and other Union officials had urged Union members (employees) not to cooperate with management in any investigatory interviews. Egglezos candidly acknowledged that such was the Union's policy:

Q. . . . Mr. Egglezos, is it true you have taken such a position with the men that they did not have to answer questions in the course of this investigation?

A. Yes, I had.

Q. Isn't it true that this policy or this statement you were making to the men at that time, was a matter of union policy at that time to inform people going into investigations that they did not have to provide information in the investigation if they did not wish to do so?

A. Yes, that is correct.

[R., Vol. I, at 123–124.]

Shortly before the Harrison-Salazar investigatory interview took place, the Union's non-cooperative policy had been effected:

Q. As a matter of fact, this very same type of behavior occurred in an investigation just shortly prior to the one that we are now discussing in which the employees refused to provide information in the investigation. Is that correct?

A. That is correct.

* * * * * *

Q. And, as a matter of fact, the union since that time has continued to pursue the policy of advising employees in investigations not to respond to company questions in the investigation. Is that not correct?

A. Correct.

[R., Vol. I, at 124.]

The Union's contention is that in an investigatory interview the entire burden should be on the employer to tell employees what is wrong, and that employees have no reciprocal obligation to cooperate with the employer's attempt to ascertain the source of difficulties:

No, when I go in there it's just to tell them, "You people don't have to answer no questions. Just let the company tell us what it's all about."

[R., Vol. I, at 134.]

The Union's approach, according to Egglezos, is necessitated by the fact that employees who cooperate in an investigatory interview are almost always dismissed, because they, in effect, tell management too much. This approach is directly contrary to the very purpose of an investigative interview, i. e., to ascertain what the problem is, how it has developed and what, if any, solution or direction is dictated based upon the facts disclosed. The final outcome of some investigatory interviews very likely will lead to the dismissal of the employee. That, however, does not alter the fact that such interviews are investigatory in nature before the employer has committed himself to any disciplinary action against an employee. The Union's policy of non-cooperation exacerbates problems rather than resolving them. An investigatory interview is fact-finding in character, constituting an effort on the part of the employer to maintain discipline and plant security. The *outcome* or *consequence* cannot be determined until the nature of the employee's conduct is ascertained.

*Weingarten* holds that the main purpose for allowing a union representative to attend an investigatory interview with the employee is to ensure that a parity exists between the parties involved:

Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetrates the inequality the Act was designed to eliminate, and bars recourse to the safeguards the Act provided "to redress the perceived imbalance of economic power between labor and management."

The above holding has not been automatically applied in other situations, even though it is far-reaching in terms of protecting employees' § 7 rights. In *Mt. Vernon Tanker Co. v. National Labor Relations Board*, 549 F.2d 571 (9th Cir. 1977), *Weingarten* was held inapplicable in a maritime setting. There the Court held that a seaman could not have his union representative present at a "logging" (a proceeding in which the seaman is given notice of the entries in the ship's log relating to misconduct with which he is charged). At first glance, it would appear that a "logging" and an investigatory interview are quite similar. However, the Court distinguished these proceedings by observing that a "logging" is not held to ascertain if misconduct has occurred. It occurs after the ship's captain has determined that an offense has been committed. The Court noted that the *Weingarten* right of union representation does not arise until the investigatory hearing is held.

Further, in Coca-Cola Bottling Co. of Los Angeles and International Association of Machinists and Aerospace Workers, 227 NLRB No. 173, 94 L.R.R.M. 1200 (1977), the NLRB refused to apply *Weingarten* to circumstances where an employee had requested the presence of a specific union representative. The board held that it was a prerogative of the employer to hold the meeting without delay. Inasmuch as the employee under investigation did not request representation by an alternative union representative, the NLRB ruled that the employer did not have any obligation to suggest and secure such alternative representation. The Board ruled that the employer need not postpone an investigatory interview if a particular union representative is absent but another is available.

We decline to expand the *Weingarten* rationale to situations other than actual investigatory interviews. Furthermore, the right of union representation at the investigatory interview ripens *only if* the employee involved in the investigation has made his own prior request for such representation. The employer is under no obligation to accord the employee subject to an investigatory interview with consultation with his union representatives on company time if the interview date otherwise provides the employee adequate opportunity to consult with union representatives on his own time prior to the interview. Thus, we do believe that *Weingarten* requires that the employer set investigatory interviews at such a future time and place that the employee will be provided the opportunity to consult with his representative in advance thereof on his own time.

## II.

Inasmuch as we hold that Climax did not violate the employees' § 7 rights, we elect not to reach and discuss the second point raised on review.

We decline to enforce the order of the NLRB.

McKAY, Circuit Judge, concurring:

I concur in the court's opinion insofar as it deals with the right of the union to demand a consultation on company time with the affected employees prior to the company initiated investigation interview. I also agree that we need not reach the second issue concerning possible waiver of consultation rights based on the nature of advice the union might give in such a consultation. Since the court nonetheless discusses without deciding the second issue, I do not concur in that portion of the opinion. I express no opinion on how that issue should be decided when properly required to be decided in another case.