**UNITED STATES POSTAL SERVICE, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**American Postal Workers Union, AFL–CIO, and East Bay Area Local, American Postal Workers Union, AFL–CIO, Intervenors.**

**No. 91–1373.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 18, 1992.

Decided June 30, 1992.

Douglas N. Letter, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jeffrica Jenkins Lee and Jacob N. Lewis, Attys., Dept. of Justice, and Karen A. Intrater, Associate Gen. Counsel, Jesse L. Butler, Asst. Gen. Counsel, James A. Friedman and Robert P. Sindermann, Jr., Attys., U.S. Postal Service, Washington, D.C., were on the brief, for petitioner William Kanter, Atty., Dept. of Justice, and Stephen E. Alpren, Washington, D.C., also entered appearances for petitioner.

William M. Bernstein, Atty., N.L.R.B., with whom Jerry M. Hunter, Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, Washington, D.C., were on the brief, for respondent.

Anton G. Hajjar, Washington, D.C., was on the brief for intervenors.

Before: RUTH BADER GINSBURG, HENDERSON and RANDOLPH, Circuit Judges.

Opinion of the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

In *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the Supreme Court upheld a National Labor Relations Board (Board or NLRB) decision interpreting section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157,[1] to secure to employees the right to union representation at an investigatory interview that the employee reasonably believes may result in disciplinary action. The dispute before us concerns the propriety of the Board's reading of the section 7 right affirmed in *Weingarten* to cover pre-interview consultation between employee and union representative.

In the ruling under review, the Board determined that the United States Postal Service (USPS) committed an unfair labor practice[2] in March 1989 when Postal Inspectors, following a USPS nationwide policy, denied an employee the opportunity to consult with his union steward prior to an interrogation concerning the employee's alleged misconduct. The NLRB's remedial order directed the Postal Service to cease and desist from interfering with the employee-union representative consultation right recognized in the Board's decision, and it required the Postal Service to post remedial notices at all USPS union-represented facilities.

We conclude that the NLRB has advanced a permissible construction of the NLRA, one that is consistent with the language of the statute and with the Supreme Court's *Weingarten* decision. The Board's interpretation therefore warrants our respect. We furthermore conclude that, in view of the nationwide policy followed by the Postal Inspectors, the Board acted within its large remedial discretion in requiring the posting of corrective notices at all USPS union-represented facilities. Accordingly, we enforce the NLRB's order in full.

## I. FACTS AND NLRB PROCEEDINGS

Benjamin Salvador, a member of the American Postal Workers Union (Union or APWU), began working for the Postal Service in 1977. At the time of the episode in suit, he was employed as a "business reply" clerk at the Fremont, California Post Office. Confronted by his supervisor in March 1989 with apparent inaccuracies in a postal customer's account balance, Salvador attributed the discrepancies to a temporary bookkeeping manoeuver he was trained to use to cope with a time bind. The supervisor, evidently not satisfied that the errors were innocent, contacted the Postal Inspection Service.

Postal Inspectors are USPS employees. They serve, however, as federal law enforcement officers, with authority to carry weapons, make arrests, and enforce postal and other laws of the United States. *See* 18 U.S.C. § 3061. The Inspection Service undertakes investigations only when criminal conduct is suspected. If an investigation reveals no crime, the Inspectors turn over the evidence they have gathered to USPS management, without recommendation or evaluation. Management then decides whether the evidence warrants disciplinary action.

On March 9, 1989, Salvador was summoned, just after his lunch break and without advance warning, to a training/supply room, where two waiting Inspectors informed him that their inquiry concerned his "job." The collective bargaining agreement between USPS and APWU provided: "If an employee requests a steward or Union representative to be present during the course of an interrogation by the Inspection Service, such request will be granted." Salvador accordingly asked for the attendance of his union steward, Anne Rodrigues. The interview was deferred for forty-five minutes to an hour, pending Rodrigues' attendance, during which time Salvador was kept in isolation in the train-

---

1. Section 7 establishes the right of employees, *inter alia*, "to engage in ... concerted activities for ... mutual aid or protection."

2. Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7."

ing/supply room. When Rodrigues arrived, she immediately and repeatedly requested permission to confer privately with Salvador before the interview resumed. The Inspectors refused her request. Their refusal followed official instructions contained in USPS's Inspection Service Manual; the Manual declared it USPS nationwide policy to deny all requests for pre-interrogation consultation between employees and their collective bargaining representatives.

The interview proceeded, and Salvador answered all questions asked of him. Rodrigues also participated in the interview, although when Salvador first requested her presence, he was told she could attend only "as a witness" to the interrogation. The record does not disclose what action was taken regarding Salvador after the investigation concluded.

Shortly after Salvador's interview, the Union lodged an unfair labor practice charge and, in April 1989, the NLRB Regional Director issued a complaint concerning the denial of Rodrigues' request for pre-interview consultation with Salvador. The Postal Service denied that an unfair labor practice had occurred and contended that, in any event, the matter had been remedied by a notice the Service had voluntarily posted in five different locations at Fremont Post Office installations. This notice, unsigned, acknowledged the Union's charge alleging the failure of the Postal Service "to grant employees the right to confer with their union representative before an investigatory interview" and stated, specifically:

> We will not prohibit employees from conferring with their union representative, upon request, where the employee has invoked his or her right to have union representation present at an investigatory interview conducted by agents of the Inspection Service which the employee reasonably believes could lead to discipline. We also will not prohibit such union representative from participating in any such interview to the extent permitted by the Supreme Court's *Weingarten* decision.

In proceedings before an administrative law judge (ALJ), the Regional Director stressed that, in Salvador's case, the Postal Service had repeated a previously adjudicated unfair labor practice. Less than a year earlier, the Board had determined that, in April 1982, at the very same Fremont Post Office, the Service had violated an employee's section 7 right when a Postal Inspector refused to let a union representative confer with the employee prior to an investigatory interview. *See United States Postal Serv.*, 288 NLRB 864 (Apr. 29, 1988). Despite that unappealed ruling, the Postal Service had retained in its Inspection Service Manual, the companywide instruction requiring denial of "all requests for consultations between employees and their [union] representatives prior to any interview by a Postal Inspector." Stipulation at 1–2, *NLRB v. United States Postal Serv.*, No. C 89 2734 FMS (N.D.Cal., Aug. 1989) (Application for Enforcement of NLRB Subpoena).

The Postal Service, in response to the Regional Director's complaint, urged containment of the *Weingarten* precedent to union presence at an interrogation; the Service pressed, particularly, the inappropriateness of spreading a right of prior consultation to criminal investigations. The Service further argued that even if the right to a representative recognized in *Weingarten* could be construed to include a right to prior consultation, the latter right should not be allowed in Salvador's case because APWU had a policy of noncooperation.

The ALJ, applying Board precedents, upheld the asserted section 7 employee right to consult privately with a union representative prior to a management interview implicating discipline. *See Climax Molybdenum Co.*, 227 NLRB 1189 (1977), *enforcement denied*, 584 F.2d 360 (10th Cir.1978); *Pacific Tel. & Tel. Co.*, 262 NLRB 1034, 1048 (1982), *enf'd*, 711 F.2d 134 (9th Cir. 1983). Furthermore, the ALJ noted, the Board had very recently, in an unappealed decision, rejected the Postal Service plea that a consultation right should not be available in a criminal investigation con-

ducted by the Inspection Service. *See United States Postal Serv.*, 288 NLRB at 866. The proof did not bear out, the ALJ found, that Rodrigues, pursuant to Union instructions, would have counseled Salvador against cooperation with the Postal Inspectors. Finally, in view of the USPS policy announced in the Inspection Service Manual, the ALJ recommended that the Postal Service be ordered (1) to cease and desist on a nationwide basis from engaging in the consultation denials declared unlawful, and (2) to make a nationwide posting of USPS's Notice to Employees that

> WE WILL NOT refuse to permit union representatives to consult with employees prior to investigatory interviews conducted by Postal Inspectors which the employees reasonably believe will result in disciplinary action and WE WILL NOT refuse to permit employees to speak with union representatives *prior to such interviews*.

The Board, in a June 21, 1991 decision, affirmed the ALJ's rulings, findings, and conclusions and adopted his recommended order. *United States Postal Serv.*, 303 NLRB No. 75 (1991). In footnotes, the three-member panel added these qualifications. First, Chairman Stephens "expresse[d] no opinion on the Board's interpretation of [*Weingarten*]," but joined his colleagues "for institutional reasons." Second, in Member Raudabaugh's view, if a union, contrary to what the evidence showed in this case, in fact had a policy "of routinely telling employees to refuse to cooperate with an investigation," then "an employer might well be privileged to forbid prior consultation." Finally, Member Cracraft noted that, "[a]lthough this is the second occasion in which the [Postal Service] has committed this violation, ... these violations both occurred at [USPS's] Fremont, California facility 7 years apart." Because no evidence showed "that the unlawful conduct has been carried out or disseminated to employees at any other facilities," she "would not order employerwide

posting of the notice," but would have limited the remedy "to the Fremont, California facility." *Id.* at 1–2, nn. 4 & 5.

## II.  DISPOSITIONS

### A.  Jurisdiction

■ The Union, as intervenor, maintains that federal courts lack jurisdiction over this—or any—Postal Service petition seeking review of an NLRB order. The Postal Reorganization Act (PRA) places Postal Service labor relations under the governance of National Labor Relations Act provisions. *See* 39 U.S.C. § 1209(a).[3] APWU maintains, however, that NLRA section 10(f), 29 U.S.C. § 160(f), which provides for court review of Board orders on petition of an aggrieved party, is not among the incorporated provisions. An unconstrained reading of section 1209(a)'s incorporation language, the Union explains, would draw in NLRA section 10(e), 29 U.S.C. § 160(e), which governs *NLRB* enforcement petitions. But NLRB enforcement petitions are authorized by a discrete PRA provision, 39 U.S.C. § 1208(a), which states: "The courts of the United States shall have jurisdiction with respect to actions brought by the [NLRB] under this chapter to the same extent that they have jurisdiction with respect to actions under title 29." There would have been no need for section 1208(a), APWU concludes, if section 1209(a) encompassed judicial review petitions. *See* 2A SUTHERLAND ON STATUTORY CONSTRUCTION § 46.06, at 119 (Singer, 5th ed., 1991) (statutes should be "construed ... so that no part will be ... superfluous").

APWU's jurisdictional argument is difficult to reconcile with the declared purpose of Congress to place Postal Service industrial relations under the regime governing "nationwide enterprises in the private sector." *See* H.R.Rep. No. 91–1104, 91st Cong., 2d Sess. 13 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3662. Nor can we seriously entertain the contention that separa-

---

**3.** 39 U.S.C. § 1209(a) prescribes that postal employee-management relations "shall, to the extent not inconsistent with" other PRA provisions, follow the NLRA model. The "principal exception" is that postal employees are barred from striking. *See* H.R.Rep. 91–1104, 91st Cong., 2d Sess. 10, *reprinted in* 1970 U.S.C.C.A.N. 3649, 3658.

tion-of-powers concerns tug against judicial review. *Cf.* 5 U.S.C. § 7123 (providing for judicial review of Federal Labor Relations Authority decisions). Nevertheless, we pretermit the Union's charge that Congress precluded USPS's petition for review. The Board has cross-applied for enforcement of its order, and that application falls squarely within 39 U.S.C. § 1208(a). In ruling on the cross-application, we have authority to consider the responding party's objections to the Board's decision.[4] *See Ford Motor Co. v. NLRB*, 305 U.S. 364, 370, 59 S.Ct. 301, 305, 83 L.Ed. 221 (1939); *FLRA v. U.S. Dep't of Commerce*, 962 F.2d 1055, 1058 (D.C.Cir.1992).

## B. Issue Preclusion

■ Intervenor APWU makes a further threshold argument. The Union acknowledges that the Postal Service is not barred by preclusion principles from challenging the nationwide scope of the Board's remedy, but asserts that a prior adjudication, *United States Postal Serv.*, 288 NLRB 864 (1988), is conclusive on the merits of the unfair labor practice charge. That prior adjudication also involved the Fremont, California Post Office; it both upheld the section 7 consultation right reasserted here, and disposed of defenses raised again by the Postal Service. The Postal Service, APWU underscores, failed to seek judicial review of the 1988 NLRB decision. Essentially, the Union argues, the Service, having deliberately passed up its first opportunity, should not be accorded a second chance for court review.

The Union's preclusion plea would have been worthy of consideration had the NLRB made it. *See, e.g., Lockheed Shipbuilding & Construction Co.*, 278 NLRB 18 (1986). But courts do not force preclusion pleas on parties who choose not to make them, and APWU is not positioned to determine the Board's litigation strategy. *See Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1060 (3d Cir.1980). Perhaps because it prefers to have a judicial response

to the questions this case presents, the NLRB raised no prior adjudication bar to the Postal Service's objections. *Cf. Poulin v. Bowen*, 817 F.2d 865, 868–69 (D.C.Cir. 1987) (agency that waived application of "administrative res judicata" may not assert that doctrine as alternate basis for its decision). In short, we reject APWU's endeavor to achieve disposition of this case on a "rationale [not] set forth by the agency itself." *See Fort Stewart Schools v. FLRA*, 495 U.S. 641, 652, 110 S.Ct. 2043, 2049, 109 L.Ed.2d 659 (1990); *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95, 63 S.Ct. 454, 461–62, 87 L.Ed. 626 (1943).

## C. Merits

■ The Postal Service initially recognizes that "[j]udicial deference to reasonable interpretations by an agency of a statute that it administers is a dominant, well settled principle of federal law." *See National R.R. Passenger Corp. v. Boston & Maine Corp.*, —— U.S. ——, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992). As stated in the leading case, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). "If the agency interpretation is not in conflict with the plain language of the statute, deference is due." *National R.R. Passenger Corp.*, 112 S.Ct. at 1401 (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 292, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988)).

This case does not fall within the standard *Chevron* analysis, the Postal Service maintains, because the Board's decision reflects its interpretation of a Supreme Court precedent construing the NLRA, *i.e.*, *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). "[B]efore reaching the issue of deference to the

---

4. 39 U.S.C. § 1208(a) gives federal courts jurisdiction in actions brought by the NLRB "to the same extent that they have jurisdiction ... under title 29," and 29 U.S.C. § 160(e) defines that extent as "jurisdiction of the proceeding *and of the question determined therein.*" (Emphasis added.)

Board," the Service urges; "a reviewing court must first determine whether the NLRB's construction is consistent with [the guiding Supreme Court] precedent." Brief for the Petitioner/Cross–Respondent at 25. The Board's decision here, USPS centrally argues, is irreconcilable with *Weingarten.* In making this argument, the Postal Service emphasizes *Lechmere, Inc. v. NLRB,* —— U.S. ——, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), in which the Court held a Board decision incompatible with the statutory construction precedent the Court had set in *NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956). *See also Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis,* and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning.").

*Weingarten upheld* the Board's judgment that an employee had a section 7 right to the presence of a union representative during an investigatory interview. The Postal Service points out, however, that the *Weingarten* decision acknowledged "contours and limits" to the statutory right. 420 U.S. at 256, 95 S.Ct. at 963. The Court in *Weingarten* spoke of protection against interference due "legitimate employer prerogatives," *id.* at 258, 95 S.Ct. at 964, and observed that "[a] knowledgeable union representative could assist the employer ... [in] getting to the bottom of the incident occasioning the interview," without "transform[ing] the interview into an adversary contest." *Id.* at 263, 95 S.Ct. at 966.

The careful *Weingarten* balance between employer prerogative and employee right, the Postal Service charges, has been upset by ·the NLRB in this case and in prior Board decisions recognizing a pre-interview consultation right. By failing to accord proper weight to the employer's interest in gathering information needed to detect and check wrongdoing, the Service asserts, the Board has demonstrated its misunderstanding of *Weingarten's* interpretation of section 7.

We find unpersuasive the Postal Service's attempt to fit *Weingarten* and this case into the *Babcock/Lechmere* mold. *Babcock,* the guidepost decision on allowing nonemployee organizers onto an employer's property, held a Board construction of section 7 *impermissible.* The *Lechmere* Court read *Babcock* as saying, in *Chevron* terms, that Congress had directly spoken to the question at issue. *Lechmere,* 112 S.Ct. at 848. *Babcock* had tightly circumscribed the Board's authority under the NLRA to order nonemployee access to an employer's premises. The Board, according to the *Lechmere* majority, had departed from *Babcock's* "straightforward teaching." *Id.*

*Weingarten,* in contrast, far from upsetting an NLRB order and correcting a Board error, spoke with approval of *NLRB-shaped* "contours and limits" to the statutory right. 420 U.S. at 256, 95 S.Ct. at 963. Key to the *Weingarten* decision is this observation:

> It is the province of the Board, not the courts, to determine whether or not the "need" [for union assistance at an investigatory interview] exists in light of changing industrial practices and the Board's cumulative experience in dealing with labor-management relations.... [T]he Board's construction here, while it may not be required by the Act, is at least permissible under it....

*Id.* at 266–67, 95 S.Ct. at 968. *Weingarten* thus did not rein in the Board, as *Babcock* did. The precedent set in *Weingarten,* instead, is fully consistent with the Board's recognition in. this case that Congress, in enacting section 7, did not "directly [speak] to the precise question at issue," *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781, *i.e.,* the scope of union assistance appropriate at an investigatory interview. We thus face a case in which deference is due to the Board's "special competence" in construing the section 7 phrase, "concerted activities for ... mutual aid or protection." *See Weingarten,* 420 U.S. at 266, 267, 95 S.Ct. at 968, 968.

■ We turn, accordingly, to the question whether the Board's unfair labor practice determination qualifies as "reasonable," *see Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782; and we hold that the Board's judgment measures up to the applicable standard.

The NLRB determined that the employee's *Weingarten* recognized right to the assistance of "[a] knowledgeable union representative," *see* 420 U.S. at 263, 95 S.Ct. at 966, sensibly means a representative familiar with the matter under investigation. Absent such familiarity, the representative will not be well-positioned to aid in a full and cogent presentation of the employee's view of the matter, bringing to light justifications, explanations, extenuating circumstances, and other mitigating factors. *See Weingarten*, 420 U.S. at 262–63, 95 S.Ct. at 966 ("A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors."); *Climax Molybdenum*, 227 NLRB at 1190 (prior consultation allows union representative "to learn [employee's] version of the events and gain familiarity with facts").

This case is illustrative. Union steward Rodrigues testified that, on other occasions when she was called to attend investigative interviews, she knew, "prior to going into the meeting," just "what was going on, what the situation was about." Prior to the start of Salvador's March 9, 1989 interview, however, Rodrigues knew only that Salvador, with whom she had been acquainted since her early days as a postal worker, was "an honest employee and [she] couldn't bring the two together: him embezzling funds—and that's why [she] would have gone in and got his story."

Significantly, in the only court case declining to extend the section 7 right confirmed in *Weingarten* to a plea for pre-interview consultation, ample time had been provided after notice, and before the interview, to allow the employees subject to investigation to arrange a conference. *See Climax Molybdenum Co. v. NLRB*, 584 F.2d 360, 363 (10th Cir.1978) (17½ hours distanced time employees were advised of pending investigation and time it took place). The court therefore held:

> The employer is under no obligation to accord the employee subject to an investigatory interview with consultation with his union representatives *on company time if the interview date otherwise provides the employee adequate opportunity to consult with union representatives on his own time prior to the interview.* Thus, we do believe that *Weingarten* requires that the employer set investigatory interviews at such a future time and place that the employee will be provided the opportunity to consult with his representative in advance thereof on his own time.

*Id.* at 365 (emphasis added). In the case before us, as in *Pacific Tel. & Tel. Co. v. NLRB*, 711 F.2d 134, 137 n. 4 (9th Cir. 1983), no time at all had been allowed for a conference. *See also United States Postal Serv.*, 288 NLRB at 866.

■ Management is not stripped, we note, of effective control of employee misconduct by allowing employee-union representative consultation in advance of interrogation. The employer remains in command of the time, place, and manner of the interview, and can concentrate on hearing the employee's account, with "no duty to bargain with the union representative" at the interview. *See Weingarten*, 420 U.S. at 260, 95 S.Ct. at 965. The fact of prior consultation, moreover, can be weighed in evaluating the employee's credibility. Nor can we agree that obstruction necessarily is promoted by consultation. One might equally forecast, as the Board observed, that an uninformed representative would attempt to obstruct the interrogation "as a precautionary means of protecting employees from unknown possibilities." *Climax Molybdenum Co.*, 227 NLRB at 1190.

Nor was the Board obliged to except Postal Inspector interrogations from the consultation right at issue based on the potentially criminal character of the conduct that Inspectors investigate. *Weingarten* protections have been consistently ac-

corded to private sector employees suspected of criminal conduct. *See, e.g., Exxon Co.,* 223 NLRB 103 (1976). Furthermore, the results of inspections, when no criminal proceedings ensue, are routinely turned over to management for possible use in disciplinary actions. *See* ALJ Decision at 2, *United States Postal Serv.,* 303 NLRB No. 75 (June 21, 1991). Mindful of the deference due to the Board, we uphold as reasonable the NLRB's judgment that neither "public safety" nor "legitimate employer prerogatives" necessitate the suggested exemption of Inspector interviews, and the attendant "sacrifice" of the statutory right of postal employees. *See United States Postal Serv.,* 241 NLRB at 142 & n. 12.[5]

■ The Postal Service next urges that it was APWU's policy to have Union stewards tell interviewees at Inspection Service interrogations "to remain silent"; such advice, USPS urges, could only frustrate, not advance the objective of uncovering truth. The Postal Service supports this point by citing pages from an APWU 1986 publication: A Guide for the Craft Employee in Dealing with the U.S. Postal Inspection Service. The Guide contains these lines:

Q. What are your rights during an interrogation by the inspection service in which you could possibly be the subject of a criminal investigation?

A. The best possible advice to an employee during this type of situation is to remain silent. Advise the inspector that you intend to seek legal counsel. Then when you have engaged the services of an attorney you will cooperate with the investigation....

Guide at 20–21. Asked whether she would have followed the Guide and counseled Sal-

vador's silence, Rodrigues ultimately clarified that if Salvador admitted "he had done wrong ..., I would have told him to remain silent and to let us handle it from there." But if he had told her he was innocent, she would have told him he had "nothing to hide."[6]

No evidence was introduced to show that the Guide was distributed generally to Union members or that the Union otherwise maintained a noncooperation policy. Nor was there any showing that Rodrigues or any Union steward had ever advised noncooperation with the Inspection Service. At the interview itself, Rodrigues made no effort to urge silence upon Salvador. To the contrary, she assisted the Inspectors in eliciting the facts from him. Viewing the record as a whole, the ALJ found that, had Rodrigues been allowed to consult with Salvador, "there was only a possibility that she would have advised him to remain silent" or otherwise refuse to cooperate. The evidence supporting that finding qualifies as "substantial." *See* 29 U.S.C. § 160(e). We therefore do not reach the question whether it would have been incumbent upon the Board, upon proof of a union-enforced policy of noncooperation, to excuse an employer's consultation denial. *Cf. Climax Molybdenum,* 584 F.2d at 363–64 (denying enforcement of Board's order where union had a policy of noncooperation pursuant to which union officials, including the official who requested the pre-interview consultation, "had urged [employees] not to cooperate with management in any investigatory interviews").

■ The Postal Service ultimately argues that the remedy is overbroad. Taking into account that it has been charged only twice with the unfair labor practice in ques-

---

5. A question was raised at oral argument, and in subsequent submissions to the court, concerning the potential consequences of an employee's telling her union steward the whole story. A steward, unlike a lawyer, can be compelled to testify in court as to his knowledge of criminal conduct, and postal employees are obliged, by regulation, to report to USPS misconduct of which they are aware. These considerations were not aired before the Board. Whatever impact they might have on the union representative-employee conversation, we cannot find, on

the current record, that they supply a reason for *the employer* to deny the opportunity for prior consultation. *Cf.* Climax Molybdenum, 227 NLRB at 1190 (denied opportunity to consult beforehand, steward might advise employee silence at interview, despite employee's innocence).

6. The ALJ found Rodrigues a credible witness. *See* ALJ Decision at 7, United States Postal Serv., 303 NLRB No. 75 (June 21, 1991).

tion, that the two episodes occurred, several years apart, at the same facility, and that it had voluntarily posted notices at that facility, the Service resists nationwide relief. The ALJ, however, whose decision the Board adopted, properly relied upon these features of the case: (1) the collective bargaining agreement provision recognizing the right to Union participation in Inspection Service interrogations applies to APWU members nationwide; and (2) the Inspection Service Manual, which expressly rules out leave to confer, governs all Inspectors, wherever they undertake an investigation. Nor do we agree that cause for restraint is supplied by the Service's commission of a second violation at the Fremont Post Office, despite the cease and desist order the Board had issued regarding that facility less than a year earlier.

In sum, Congress allowed the Board large discretion to impose remedies that "will effectuate the policies of [the NLRA]." *See* 29 U.S.C. § 160(c). We have no warrant on the facts before us to declare the Board's relief order excessive. *See Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943); *Consolidated Freightways v. NLRB*, 892 F.2d 1052, 1055 (D.C.Cir.1989).

## III. SUMMARY AND CONCLUSION

In *Weingarten*, the Supreme Court approved as consistent with NLRA section 7 the Board's recognition of a right to a union representative's attendance at investigatory interviews. The NLRB has since determined that the right recognized in *Weingarten* and the statutory purposes underlying that decision are best effectuated by allowing employees to consult with their union representatives prior to the occurrence of an interview; and the Board has extended that protection to Postal Service employees whose conduct is subject to investigation by the Postal Inspection Service.

Noting the court's clear statutory authority to entertain NLRB enforcement petitions and our obligation to review the reasoning actually relied upon by the agen-

cy, we find the Board's decision a "permissible" and "reasonable" construction of section 7, one in no way foreclosed by the *Weingarten* decision. The Board was unpersuaded either that the Union in this case maintained a policy of counseling noncooperation or that the Union representative, Anne Rodrigues, had pre-interview consultation been allowed, would have counseled the interviewee, postal employee Benjamin Salvador, to remain silent. The record supports these Board assessments. We therefore leave for another day and case the question whether an established union policy of counseling noncooperation should excuse an employer's refusal to allow pre-interrogation consultation. The Postal Service's currently-maintained policy, as stipulated by the parties, directs Inspectors, nationwide, to deny all pre-interview consultations. That policy, combined with USPS's evident disregard of a prior Board order, warranted the nationwide cease and desist directive and notice posting remedy approved by the Board. Accordingly, the cross-application for enforcement of the NLRB's order is

*Granted.*