711 F.2d 134
 113 L.R.R.M. (BNA) 3529, 98 Lab.Cas. P 10,296
 The PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent. (Two cases)
NATIONAL LABOR RELATIONS BOARD, Cross-Petitioner,
v.
The PACIFIC TELEPHONE AND TELEGRAPH COMPANY,
Cross-Respondent. (Two cases)
 Nos. 82-7466, 82-7467, 82-7556 and 82-7557.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 12, 1983.
Decided July 19, 1983.
 
 Christine Weiner, Washington, D.C., for respondent.
 Michael A. Rodriguez, San Francisco, Cal., for petitioner.
 On Petition for Review and Cross-Application for Enforcement of Decisions and Orders of the National Labor Relations Board.
 Before BROWNING, Chief Judge, MERRILL and ALARCON, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 In consolidated cases Pacific Telephone and Telegraph Company petitions for review of orders issued by the National Labor Relations Board holding the company guilty of unfair labor practices in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). The Board ruled that Pacific Telephone had deprived employees of rights guaranteed by § 7 of the Act, 29 U.S.C. § 157[1], in holding investigatory interviews regarding improper employee conduct without first informing the employees of the subject matter of the interviews and allowing them time for a pre-interview conference with a union representative. The Board cross-applies for enforcement of its orders.
 
 
 2
 One of the consolidated cases (262 N.L.R.B. No. 127, 1982-83 NLRB Dec. (CCH) p 15,004 (1982)) involves conduct in 1978 by employees Ebojo and Flores, two installer-repairmen. By independent investigation Pacific Telephone had secured evidence that on company time Flores had installed unauthorized telephone equipment in Ebojo's home. Company supervisors summoned Ebojo and Flores to interviews and also summoned union steward Robert Green to act as the employees' representative. Ebojo, Flores and Green all inquired as to the purpose of the interview but received no information. Flores was interviewed first and after being told of the evidence in the possession of the company, admitted having installed unauthorized equipment in Ebojo's home. Discrepancies in Flores's timesheets were also discussed. When Ebojo was summoned for an interview, Green requested an opportunity to confer with him prior to the interview but this request was refused.[2] Ebojo denied possession of the sort of equipment the company believed he had but did admit possession of other unauthorized equipment. Both Ebojo and Flores were subsequently discharged. The company discharged Flores for timesheet falsification and for the unauthorized installation of equipment in Ebojo's home. The company discharged Ebojo for timesheet falsification and for having unauthorized equipment installed in his home.
 
 
 3
 In the other case (262 N.L.R.B. No. 125, 1982-83 NLRB Dec. p 15,003 (1982)), Pacific Telephone, by independent investigation, obtained information in 1980 that two of its long-distance operators, Revada and Martinez, had used company equipment to place lengthy long-distance calls from their homes while taking steps to avoid billing. In this case, the company investigating officer did advise the employees and their union representative of the subject matter of the interview, but refused a request of the representative to a pre-interview conference with the employees. The employees refused to give any information and were subsequently discharged for misuse of company time and equipment.
 
 
 4
 Ebojo and Flores filed charges with the Board, as did the union on behalf of Revada and Martinez. In both cases the Board found that the employer had violated § 8(a)(1) by refusing to grant pre-interview conferences to Ebojo, Revada and Martinez and to inform Flores and Ebojo as to the subject matter of the investigation. It entered cease and desist orders and also ordered Flores and Ebojo reinstated with back pay.
 
 
 5
 In NLRB v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the Supreme Court, accepting the position taken by the Board, held that § 7 of the National Labor Relations Act created a statutory right of an employee to union representation at any investigatory interview conducted by the employer which the employee reasonably fears may result in his discipline.
 
 
 6
 The questions presented on this petition are: (1) whether the Board permissibly construed the Weingarten right to include the right to be informed prior to the interview of the subject matter of the interview and the nature of any charge of impropriety it may encompass and the right to a pre-interview conference with a union representative; (2) whether the request for a conference may come from the union representative or must come from the employee himself; and (3) whether the grant to Flores and Ebojo of reinstatement and back pay was within the Board's statutory authority. The first two questions require an examination of the Board's construction of § 7 and its view of the nature of the employee's right to act in concert as approved and accepted by the court in Weingarten. This Court will uphold the Board's construction of the National Labor Relations Act if it is reasonable or permissible. Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979); Weingarten, 420 U.S. at 266-67, 95 S.Ct. at 968.
 
 I.
 
 7
 Answer to the first question depends upon the nature of the employee's right to act in concert. In Weingarten, the Court quoted with approval from the Board's decision in Mobil Oil Corp., 196 N.L.R.B. 1052 (1972), enf't. denied, 482 F.2d 842 (7th Cir.1973). Weingarten, 420 U.S. at 257, 95 S.Ct. at 963. The Board in Mobil Oil Corp. held it to be a violation of § 8(a)(1) to compel the employee to "appear unassisted at an interview which may put his job security in jeopardy". The Board regarded this as "a dilution of the employee's right [under § 7 of the Act] to act collectively to protect his job interests" and an "unwarranted interference with his right to insist on concerted protection rather than individual self-protection against possible adverse employer action."[3] 196 N.L.R.B. at 1052.
 
 
 8
 The Weingarten Court held that "[t]he Board's holding is a permissible construction of 'concerted activities for ... mutual aid or protection' by the agency charged by Congress with enforcement of the Act, and should have been sustained." 420 U.S. at 260, 95 S.Ct. at 965.
 
 
 9
 If the right to insist on concerted protection against possible adverse employer action encompasses union representation at interviews such as those here involved, then in our view the securing of information as to the subject matter of the interview and a pre-interview conference with a union representative are no less within the scope of that right. The Board's order that failure to provide such information and grant such pre-interview conferences constituted unfair labor practices is as permissible a construction of § 7 as was the construction upheld in Weingarten. Without such information and such conference, the ability of the union representative effectively to give the aid and protection sought by the employee would be seriously diminished.[4]
 
 II.
 
 10
 The second question presented by the petition is whether the request for a conference must come from the employee himself. Here, in the case of Ebojo, Revada and Martinez, the request came from the union representative. As we note in footnote 3, the Supreme Court has stated that the right to union representation at an investigatory interview as defined by the Board is a right which must be requested by the employee and which the employee may choose to forego. See Weingarten, 420 U.S. at 257, 95 S.Ct. at 963. We read this to mean that the employer need not suggest that the employee have union representation and not, as Pacific Telephone argues, that only the employee himself may so request. In our judgment, once union representation has been afforded, the representative may speak for the employee he represents and either the union representative or the employee may make the request for pre-interview conference.
 
 
 11
 We affirm the decision of the Board holding that Pacific Telephone violated § 8(a)(1) by failing to inform Flores and Ebojo as to the subject matter of the interview and failing to grant Ebojo, Revada and Martinez pre-interview conferences with their union representatives. Save in the respect hereinafter noted the Board's order is entitled to enforcement. IT IS SO ORDERED.
 
 III.
 
 12
 The final question presented is whether the Board's order that Flores and Ebojo are entitled to reinstatement and back pay is entitled to enforcement.
 
 
 13
 Section 10(c) of the Act, 29 U.S.C. § 160(c), provides in part: "No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged or the payment to him of any back pay if such individual was suspended or discharged for cause."
 
 
 14
 In determining that Flores and Ebojo had not been discharged for cause, the Board declined to take into consideration the confessions of the employees made during their interviews. In that respect the Board followed its holding in Kraft Foods, Inc., 251 N.L.R.B. 598 (1980). There it was held that once it appears that an interview was held contrary to Weingarten, the burden passes to the employer to show that "its decision to discipline the employee in question was not based on information obtained at the unlawful interview." Id. at 598.
 
 
 15
 We hold that the plain language of § 10(c) does not allow for such a construction. Cases from other circuits support this conclusion, holding that where employees were clearly discharged for cause and not for attempting to assert their Weingarten rights by requesting union assistance at an investigatory interview, § 10(c) precludes an order of back pay and reinstatement. Montgomery Ward & Co., Inc. v. NLRB, 664 F.2d 1095, 1097 (8th Cir.1981); see NLRB v. Kahn's & Co., Div. of Consol. Food, 694 F.2d 1070, 1071-72 (6th Cir.1982); General Motors Corp. v. NLRB, 674 F.2d 576, 577-78 (6th Cir.1982); NLRB v. Illinois Bell Telephone Co., 674 F.2d 618, 623 (7th Cir.1982); NLRB v. Potter Electric Signal Co., 600 F.2d 120, 123-24 (8th Cir.1979); cf. NLRB v. United States Postal Service, 689 F.2d 835, 839 (9th Cir.1982) (dicta). Here it clearly appears that the company discharged Flores and Ebojo for cause. The order for reinstatement and back pay was beyond the authority of the Board and is not entitled to enforcement. IT IS SO ORDERED.
 
 
 
 [1]
 Section 7, 29 U.S.C. § 157, provides in part: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, ..."
 Section 8(a)(1), 29 U.S.C. § 158(a)(1), provides: "It shall be an unfair labor practice for an employee--(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;"
 
 
 [2]
 Substantial evidence supports the Board's finding that Green made the request to meet with Ebojo and that the request was not withdrawn. Likewise, substantial evidence supports the Board's finding that the company gave no responsive answer to the inquiries of Ebojo, Flores and Green regarding the nature of the interviews
 
 
 [3]
 The Weingarten Court noted in several other respects "the contours and limits of the statutory right" as shaped by the Board in Mobil Oil and other decisions: the employee must request representation; his right is limited to situations where he reasonably believes the investigatory interview may result in disciplinary action; "the employer is free to carry on his inquiry without interviewing the employee and thus leave to the employee the choice between having an interview unaccompanied by his representative or having no interview and foregoing any benefits that might be derived from one"; and the employer is under no duty to bargain with the attending union representative. Weingarten, 420 U.S. at 256-60, 95 S.Ct. at 963-65
 
 
 [4]
 In Climax Molybdenum Co. v. NLRB, 584 F.2d 360 (10th Cir.1978), the court "decline[d]" to extend Weingarten to a pre-interview conference under the facts of that case. Id. at 365. There, however, ample time had been provided after notice and before the interview to allow the employee to arrange a conference. Under the circumstances it was held that refusal to delay the interview to allow further time for conference did not amount to a denial of a conference or constitute an unfair labor practice. In the cases before us, no time at all had been allowed for a conference