No. 2-09-0763     Filed: 11-3-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | ) ) ) | Petition for Review of an Order of the Illinois Labor Relations Board, State Panel. |
| Petitioner, | ) ) | |
| v. | ) ) | ILRB No. S--CA--07--155 |
| ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 73, | ) ) ) ) | |
| Respondents. | ) ) | |

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent Service Employees International Union, Local 73 (the Union), filed an unfair labor practice charge against petitioner, the Illinois State Toll Highway Authority (the Tollway). The Union charged that the Tollway violated an employee's right to union representation under National Labor Relations Board v. J. Weingarten, Inc., 420 U.S. 251, 43 L. Ed. 2d 171, 95 S. Ct. 959 (1975), and sections 10(a)(1) and (a)(4) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10(a)(1), 10(a)(4) (West 2008)), by not providing the employee with advance notice about the topic of investigation before the Tollway conducted an investigative interview. Respondent Illinois Labor Relations Board, State Panel (ILRB), determined that, although a union representative was provided to the employee during the investigative interview, the Tollway's failure to provide advance notice about the topic of the interview violated her right to meaningful union representation and

constituted an unfair labor practice. The Tollway appeals. We hold that, while the ILRB correctly determined that the employee was entitled to advance notice about the subject matter of the interview, she was also required to request such advance notice. We therefore set aside the ILRB's order.

The Union filed with the ILRB an amended complaint for an unfair labor practice on behalf of Arenia Williams, a toll collector with the Tollway and a member of the Union. The Union alleged that the Tollway violated sections 10(a)(1) and 10(a)(4) of the Act. At a hearing on the charge, Williams, Susan Matta, and Sandie McMillan testified for the Union, and Joseph Fivelson, an investigator with the Inspector General's office, testified for the Tollway.

Sandie McMillan testified that she was a business representative. Her responsibilities included representing union members at investigatory interviews conducted by the Inspector General. McMillan testified that, usually, the investigator from the Inspector General's office would notify the district manager, who would notify the employee. The employee would ask McMillan to accompany him or her to the interview, and McMillan would coordinate with the Inspector General to find a mutually acceptable date for the meeting. McMillan testified that the Tollway usually would not inform her of the purpose of the interview, but the employee might know, or McMillan could infer it if the employee had been suspended pending an investigation. McMillan testified that, when she arrived at an interview, she would ask about the nature of the interview and would be informed.

Williams testified that she worked at the Oak Brook toll plaza. On November 14, 2007, at about 8:30 a.m., Williams' supervisor told her to report to the Tollway's central administration office for a meeting. The supervisor did not give the reason for the meeting.

Williams proceeded to the central administration office, arriving at about 9 a.m., and she was met there by Fivelson. Williams did not ask why she was there, and Fivelson did not tell her. Fivelson led Williams into a conference room where she met Jeff Redding, another investigator with the office of the Inspector General.

Williams testified that Redding and Fivelson repeatedly asked her if she knew why she was in the meeting. Williams testified that each time she was asked she responded that she did not know. Eventually, Fivelson pointed to several boxes on the floor and told her that the boxes contained Williams' transactions for the last few months.

Fivelson testified that, before the meeting began, Williams asked him why she was there and he told Williams that the Tollway had records from August to the end of October that showed that a significant amount of funds was not turned in by Williams. Fivelson gave Williams an opportunity to resign, which she declined. Fivelson then asked Williams if she wanted union representation, and Williams stated that she wanted representation.

Redding left the room to locate someone from the Union to represent Williams. Redding returned with Lynn Murray, a union steward. Murray stated at the meeting that she had not yet had the formal training necessary to be the union representative during an investigative interview. Williams testified that Murray asked her what was going on but that she did not know and did not respond. Fivelson did not ask Williams and Murray if they wanted to confer. Likewise, Williams and Murray did not make any requests to confer before continuing or during the meeting. Williams testified that she was questioned about trucks that were not being validated as they passed through her tollbooth. Murray observed and took notes of the meeting.

Fivelson testified that Williams was under suspicion of stealing or not collecting nearly $6,000 from the middle of August to the end of October. Because the investigation was ongoing, a decision was made to bring Williams in for questioning and to stop the noncollection or the theft. Fivelson testified that it was his practice not to tell a supervisor or the employee about the subject matter of an interview beforehand. Nevertheless, the employee usually would know what the meeting was going to be about. Fivelson testified that, if the employee asked for union representation, it would be provided. Following the meeting, Williams was suspended.

The parties submitted written closing arguments. The Tollway argued that in paragraph 16.4 of the collective bargaining agreement between the Tollway and the Union's members the Union had waived the right for members to receive advance notice about the subject matter of an investigatory interview. Following the receipt of the written closing arguments, the administrative law judge (ALJ) issued a recommended decision. The ALJ held that Williams' rights under Weingarten were not violated, because she was provided with Union representation and Williams and Murray did not ask to confer or object to not being allowed to confer during the interview. The ALJ did not address the Tollway's contractual-waiver-of-advance-notice argument.

The Union filed exceptions to the ALJ's recommendation and argued to the ILRB that an employee's right to consult with a Union representative is compromised when the employee and the representative are not informed of the nature of the matter being investigated before an interview is conducted. The Union interpreted the right to informed consultation under Weingarten as implying knowledge of the subject matter of an investigatory interview before the interview is conducted. In particular, the Union argued that Williams did not know to invoke her rights under Weingarten until she was already in the interview and had been informed that she might be disciplined.

The Tollway maintained that Weingarten did not require it to give advance notice about the subject matter of an investigatory interview. Instead, the right to union representation was triggered only by the employee's request. In this case, Williams requested representation after Fivelson prompted her, and, once Williams made the request, all questioning stopped and a representative was brought in. The Tollway further maintained that Williams' rights under Weingarten were not violated because neither Williams nor Murray requested to confer, so they did not avail themselves of the right to confer under Weingarten.

The ILRB discussed Weingarten, noting that a union member has a right to union representation when a meeting between the employer and the employee is investigatory, the employee reasonably believes that disciplinary action may result, and the employee requests union representation. If the employee does not request union representation, his or her Weingarten rights may be forfeited. The employer is not required to immediately provide representation; rather, the employer may discontinue the interview and obtain the sought-after information in other ways. However, if the employer disciplines the employee for failing to continue the investigatory interview without representation, or continues the meeting without allowing the presence of a representative after the employee requested representation, the employer will have violated the Act. The ILRB further noted that, while the failure to apprise the employee of the topic of the meeting beforehand diminishes the ability of the union representative to effectively aid the employee, where the employee requests a particular representative who is not available (and whose absence is not attributable to employer action), the employer will be deemed not to have violated any rights under Weingarten. With this background discussed, the ILRB turned to the facts of Williams' case.

The ILRB reasoned:

"Williams had no advanced notice of her interview, and as a result, *** was unable to secure the services of any particular union representative ahead of time. *** Williams did not know the subject of the interview until she surmised what it was about from [the Tollway's] questioning. Nonetheless, not long after beginning Williams' interview, without a request from her, [the Tollway] asked whether she wanted union representation. When she replied in the affirmative, [the Tollway] obtained a Union designated representative, Murray, to assist Williams. Neither Williams nor Murray made a request to confer at any time during the investigatory interview, nor was it [the Tollway's] responsibility to offer that option, a request was necessary. Pacific Telephone [& Telegraph Co. v. National Labor Relations Board], 711 F.2d 134, 137 [(9th Cir. 1983)]. Williams apparently admitted no wrongdoing during the interview, but [the Tollway] nonetheless suspended her at the conclusion thereof.

As noted, [the Tollway] failed to provide *** Williams information as to the subject matter of the interview prior thereto, [and] in Williams' case, [the Tollway] neglected to cure its failure and thus, violated her rights under Weingarten, as Murray had no opportunity to give the aid and protection intended therein. Pacific Telephone, 711 F.2d 134, 137. The failure to provide information as to the subject matter of the investigatory interview constitutes an unfair labor practice. However, the Union's contention that [the Tollway] violated the Act by failing to provide Williams with a knowledgeable representative is completely without merit. As set out above, it is the Union's responsibility, not [the Tollway's], to provide experienced, knowledgeable union representatives. [Citations.] Murray was 'a duly designated union representative,' and [the Tollway] picked Murray from the list of such representatives provided by the Union. Thus, under these circumstances,

Charging Party is precluded from claiming [the Tollway] failed to provide Williams with a knowledgeable representative.

Based on the foregoing, the Board accepts the ALJ's recommendation that under the circumstances of this case, there was no violation of the Act in connection with the following: [the Tollway's] tape recording of investigatory interviews; [the Tollway] obtaining Murray to represent Williams in her investigatory interview; ***. However, we find that [the Tollway's failure to provide information as to the subject matter of Williams' investigatory interview violated her rights under Weingarten, and thereby, violated Section 10(a)(1) of the Act. The appropriate remedy is a posting, as there is no evidence Williams' discharge was due to retaliation for asserting her right to union representation, or 'predominantly dependent' upon information obtained through the unlawful interview, as Williams apparently admitted no wrongdoing during it."

The Tollway timely appeals the ILRB's decision.

On appeal, the Tollway challenges the ILRB's decision that Williams' Weingarten rights were violated. The Tollway argues that Williams was afforded union representation during the investigative interview and was allowed an opportunity to confer with Murray once Murray arrived, but that neither Williams nor Murray took advantage of the opportunity to confer and they continued the interview with Murray present. The Tollway argues that the ILRB correctly determined that it was not the Tollway's responsibility to suggest that Williams and Murray confer, but it was the responsibility of Williams and Murray to request such a conference. The Tollway concludes that, because it afforded Williams union representation upon request and did not interfere with Williams'

ability to confer with her union representative, the ILRB's conclusion that it violated <u>Weingarten</u> and committed an unfair labor practice was clearly erroneous.

We first consider the standard of review for the ILRB's decision. The standard of review varies depending upon whether the question presented is one of law, one of fact, or a mixed question of fact and law. <u>American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel</u>, 216 Ill. 2d 569, 577 (2005) (<u>AFSCME</u>). A question of law is subject to <u>de novo</u> review. <u>AFSCME</u>, 216 Ill. 2d at 577. Findings of fact are deemed to be <u>prima facie</u> true and correct, so a reviewing court will ascertain whether the findings of fact are against the manifest weight of the evidence. <u>AFSCME</u>, 216 Ill. 2d at 577. Mixed questions of fact and law (whether the rule of law as applied to the established facts is or is not violated) are reviewed for clear error--the administrative decision will be reversed only if it is clearly erroneous. <u>AFSCME</u>, 216 Ill. 2d at 577. A decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. <u>AFSCME</u>, 216 Ill. 2d at 577-78. With these standards in mind, we turn to the Tollway's specific contentions.

The Tollway argues that, while <u>Weingarten</u> provides an employee the right to union representation during an investigatory interview, that right does not extend to providing either the employee or the union representative with advance notice of the subject matter of the interview. In support of this contention, the Tollway reasons that, because the right to union representation matures only at the commencement of the interview and does not arise until the employee requests representation, logically, there can be no right to advance notice before the interview commences. The Tollway further notes that <u>Weingarten</u>'s language was circumspect and carefully narrow, balancing an employee's rights against an employer's prerogatives, and did not include any notion

about advance notice. The Tollway concludes that the ILRB's holding to the contrary was clearly erroneous.

We begin our analysis with Weingarten. In Weingarten, the Supreme Court recognized that the employee's right to consult with a union representative was statutory, arising from the National Labor Relations Act (NLRA) (29 U.S.C. §158(a)(1) (1970)). Weingarten, 420 U.S. at 256, 43 L. Ed. 2d at 177, 95 S. Ct. at 963. The Court noted that the right arises only in situations where the employee requests representation and in circumstances where the employee reasonably believes that the investigatory interview will result in disciplinary action. Weingarten, 420 U.S. at 257, 43 L. Ed. 2d at 178, 95 S. Ct. at 963-64. However, the Court cautioned that the employee's exercise of the right to union representation may not interfere with legitimate employer prerogatives. Weingarten, 420 U.S. at 258, 43 L. Ed. 2d at 178, 95 S. Ct. at 964. As an example, the Court wrote that upon the invocation of the employee's Weingarten rights, the employer could decline to continue the interview and instead could decide to complete its investigation using only information gathered from sources other than the employee. Weingarten, 420 U.S. at 258-59, 43 L. Ed. 2d at 178-79, 95 S. Ct. at 964.

The Tollway first cites to In re Township of Hillsborough, 24 Pub. Employee Rep. (N.J.) par. 29120 No. CO--98--231 (April 23, 1998) (hereinafter 24 Pub. Employee Rep. (N.J.) par. 29120), for the proposition that the right to advance notice of an investigatory interview is not articulated in Weingarten. While true, this does not control the issue in this case, namely, whether the employee is entitled to advance notice of the subject matter of the interview. The board in Hillsborough also noted that the employee was contacted about the investigatory interview about three hours before it was scheduled to commence and that the employer offered to delay the interview until the employee's union representative of choice would be available to attend. The employee opted to

attend the interview without delay. Hillsborough, 24 Pub. Employee Rep. (N.J.) par. 29120. We find Hillsborough to be distinguishable. First, it did not deal with providing advance notice of the subject matter of the interview. Second, while it held that advance notice to allow the scheduling of the interview was not required under Weingarten, the employer both gave advance notice and offered to delay the commencement of the interview to a more convenient time. Here, the Union challenges the fact that advance notice of the subject matter of the interview was not forthcoming. Likewise, the facts in this case show that no advance notice was given concerning the fact of the interview alone. Accordingly, Hillsborough is inapposite.

Next, the Tollway argues that the point at which rights arise under Weingarten, namely, only when the employee requests union representation in the investigatory interview, implies that the Weingarten rights cannot include the right to advance notice of the subject matter, because the Weingarten rights do not exist until after the interview has commenced. In support, the Tollway relies on National Ass'n of Letter Carriers, Sunshine Branch 504 (United States Postal Service), 350 N.L.R.B. 441, 459, 462 (2007), quoting two passages. While we find that the Tollway has accurately quoted from United States Postal Service, it has also wrenched the quotes out of context in an attempt to create the implication it argues. The Tollway argues: "The right to union representation recognized in Weingarten 'matures at the commencement of the interview,' " quoting United States Postal Service, 350 N.L.R.B. at 459. The Tollway then argues: "Given that '[t]he right does not arise *** unless and until the employee has requested representation,' it does not include the advance notice of the subject of the investigatory interview," quoting United States Postal Service, 350 N.L.R.B. at 462. While the juxtaposition of the quotes supports the Tollway's argument, the quotes themselves are separate and distinct and do not represent a point being decided in the case.

Moreover, the quotes are taken from the ALJ's recommended decision, and not the National Labor Review Board's (NLRB) actual decision.

In the first quote, the ALJ was resolving an issue where the employee had been abusive and insubordinate to a manager. The manager had instructed the employee to go to the office for a discussion. The record, according to the ALJ, did not show that the employee had a reasonable belief that the manager intended to conduct an investigatory interview. United States Postal Service, 350 N.L.R.B. at 459. In fact, the quoted portion arose in discussing the contours of the Weingarten rights and whether those rights extended so far as to include the employee's refusal to obey a manager's directive to report to a location at which an investigatory interview might occur. United States Postal Service, 350 N.L.R.B. at 459, quoting T.N.T. Red Star Express, Inc., 299 N.L.R.B. 894, 894-95 (1990). The first quote's circumstances had nothing to do with whether an employee or a union representative had the right to receive advance notice of the subject matter of an investigatory interview.

In the second quote, the context actually repudiates the inference the Tollway is attempting to draw. The ALJ was analyzing an issue about whether a different employee than the one who was the subject in the first quote had properly received her Weingarten rights. The complaint alleged that the employer violated the NLRA by requiring a purported union representative who actually held no office with the union to serve as a union representative and by denying the union representative's request to consult with the employee under investigation. United States Postal Service, 350 N.L.R.B. at 461. The ALJ reasoned that "[a]n employee has a right under Weingarten to consult with a union representative before any interview once a Weingarten right has attached and the request may be made by the union representative furnishing the representation requested." United States Postal

<u>Service</u>, 350 N.L.R.B. at 462. The ALJ further reasoned that the right did not arise until requested (the second quote) and that, even though the representative had asked to consult with the employee before the employee requested representation, after the employee requested representation the representative did not renew his request to consult with the employee. The ALJ determined that the employer did not violate the NLRA, because there was no timely request to consult by the employee or the representative. <u>United States Postal Service</u>, 350 N.L.R.B. at 462.

The ALJ also undertook an alternative analysis. The ALJ held that, "[f]or the right to prior consultation to have any meaning, the employee and the union representative must have some indication of the matter being investigated because, without that knowledge, there is nothing about which to consult." <u>United States Postal Service</u>, 350 N.L.R.B. at 462, citing <u>Pacific Telephone & Telegraph Co.</u>, 262 N.L.R.B. 1048 (1982), aff'd, <u>Pacific Telephone & Telegraph Co.</u>, 711 F.2d 134. Based on this holding, which is contrary to the Tollway's contention, the ALJ determined that there had been no violation, because the employer allowed the employee and the union representative an opportunity to consult. <u>United States Postal Service</u>, 350 N.L.R.B. at 462. Based on the alternative analysis, then, it appears that the ALJ followed <u>Pacific Telephone</u> for the proposition that advance notice is necessary, but that, like the right to consultation, the employee or the union representative must make a timely request to trigger that right.

By stitching together two unrelated quotes, the Tollway seeks to create the inference that <u>United States Postal Service</u> supports its contention that <u>Weingarten</u> rights do not extend to advance notice about the subject matter of an investigative interview, based on when those rights arise. However, <u>United States Postal Service</u>, relying on <u>Pacific Telephone</u>, 262 N.L.R.B. 1048, expressly held that, in order for the right to consultation to have any meaning, the employee and the union

representative must be given some advance information about the subject matter of the investigative interview, upon a timely request. Thus, rather than supporting the Tollway's contention, United States Postal Service repudiates the Tollway's contention. We next turn our attention to Pacific Telephone, 711 F.2d 134.

In Pacific Telephone, the phone company conducted an investigation of two of its employees (without involving the employees under investigation) and determined that, on company time, one employee had installed unauthorized equipment in the other's home. The employees were then summoned to interviews along with the union steward. Both employees and the union steward asked about the purpose of the interviews, but the phone company did not give them that information. Following the interview of the first employee, the steward asked to be allowed to speak with the other employee before the interview commenced, but he was refused. Ultimately, both employees admitted to misconduct and both were discharged. Pacific Telephone, 711 F.2d at 135. The employees filed charges with the NLRB, which determined that the refusal to inform the employees about the subject matter of the interviews beforehand and the refusal to allow the union steward to meet with the second employee before the second interview both constituted violations of the NLRA. The phone company appealed the ruling. Pacific Telephone, 711 F.2d at 136.

On appeal to the Ninth Circuit, the phone company challenged, among other things, whether Weingarten rights included the rights of an employee and a union representative to be informed about the subject matter of an investigative interview and to confer before the interview commences, and whether a request for a conference must come from only the employee or whether the union representative could make that request. Pacific Telephone, 711 F.2d at 136. The court first held that the employee had the rights to both advance notice about the subject matter of the interview and a

pre-interview conference with the union representative, reasoning that, "[w]ithout such information and such conference, the ability of the union representative effectively to give the aid and protection sought by the employee would be seriously diminished." Pacific Telephone, 711 F.2d at 137. In making this holding, the court distinguished Climax Molybdenum Co. v. National Labor Relations Board, 584 F.2d 360 (1978), which had refused to extend Weingarten rights to include advance notice, on the ground that, in Climax Molybdenum, there had been ample time between the notice and the commencement of the interview to allow the employee to meet with the union representative, while in Pacific Telephone, there was no delay between the summons to the interview and the commencement of the interview, so the employees could not meet with the representative. Pacific Telephone, 711 F.2d at 137 n.4. The court also held that, once the employee had union representation, either the employee or the union representative could make the request for a conference because the representative was allowed to speak for the employee. Pacific Telephone, 711 F.2d at 137.

Pacific Telephone expressly held that an employee's Weingarten rights include the right to receive advance notice of the subject matter of the interview upon request. Here, the ILRB divorced the request from the right and held that the Tollway violated the Act by not giving Williams advance notice of the subject matter of her interview, thereby depriving Murray of the ability to give the sort of aid and protection contemplated in Weingarten, even in the absence of a request from Williams or Murray to learn the subject matter of the interview. We also note, however, that unlike in this case, in Pacific Telephone, the employees and the union representative all asked about the subject matter of the interview. Here, by contrast, neither Williams nor Murray requested that the Tollway tell them about the subject matter of the interview. On the other hand, like Pacific Telephone,

Williams had been interviewed for a time about why her toll receipts were low. When Murray was brought in, Williams arguably knew the topic of the interview, which she could have shared with Murray. This is similar to Pacific Telephone where the union representative learned of the subject matter of the interview by attending an interview with the first employee and, when he requested to speak with the second employee, his request was denied. Thus, in Pacific Telephone, the right to advance notice was definitively tied to the employee's or the union representative's request to receive that advance notice.

The Tollway argues that Pacific Telephone is distinguishable because, in that case, the requests for advance notice of the subject matter and for a pre-interview conference were made after the employee had already been provided with union representation. The Tollway argues, relying upon Fivelson's testimony that Williams had asked him what the meeting was about before she was led into the interview room, that any request for the general subject matter of the interview was made before Williams had union representation. We first note that the ILRB apparently did not accept Fivelson's testimony over Williams' testimony that she was never told the subject matter of the interview before the interview commenced. Thus, the Tollway's argument, in essence, asks us to change the ILRB's factual determination regarding whether advance notice was given to Williams. We hold that the ILRB's determination that Williams did not receive advance notice is not against the manifest weight of the evidence. Accordingly, we cannot accept this ground to distinguish Pacific Telephone.

The Tollway asserts that all Weingarten requires is for "the employee and the union representative [to] be allowed to confer before or during questioning." In support, the Tollway cites United States Postal Service, International Brotherhood of Electrical Workers, Local 134, 17 Pub.

Employee Rep. (Ill.) par. 3022, No. L--CA--00--036 (ILRB August 29, 2001) (hereinafter Taylor, 17 Pub. Employee Rep. (Ill.) par. 3022), and Pennsylvania State Corrections Officers Ass'n, 33 Pub. Employee Rep. (Pa.) par. 33177, No. PERA--C--02--30--E (October 15, 2002) (hereinafter 33 Pub. Employee Rep. (Pa.) par. 33177)  Leaving aside the fact that none of the cases cited for this proposition addresses or diminishes the holding and guidance provided by Pacific Telephone, we note (again) that United States Postal Service actually endorses our holding that, upon request, the employer must provide the employee or the union representative information about the subject matter of an interview before the interview commences.  United States Postal Service, 350 N.L.R.B. at 462 ("For the right to prior consultation [between the employee and the union representative] to have any meaning, the employee and the union representative must have some indication of the matter being investigated because, without that knowledge, there is nothing about which to consult").

We next consider the applicability of Taylor to this case.  In Taylor, the employee was summoned to his employer's front office.  There, he was asked to sign a consent form to take a "fitness for duty" drug test.  The employee stated that he would not sign the form or go anywhere until he spoke to a union representative or his attorney, and he requested a particular union officer. The manager told the employee that, if he refused to take the test, he would be suspended immediately.  The employee again insisted that he speak to a union representative or his attorney first.  Taylor, 17 Pub. Employee Rep. (Ill.) par. 3022, at XI--141.  The manager attempted to contact the particular union officer and then summoned the union steward to the front office.  The union steward and the employee conferred, and the steward urged the employee to take the test.  The manager repeated his request that the employee take the test. The employee responded that he had not spoken to anyone yet (the particular union officer with whom he wanted to confer was not

available). The manager then suspended the employee. Taylor, 17 Pub. Employee Rep. (Ill.) par 3022, at XI--141. At no time after the employee requested union representation did the manager question the employee. The ILRB held that the employee's Weingarten rights had been fully observed. The ILRB reasoned that, when the employee requested union representation, the employer's questioning stopped, the employer summoned two union members to represent the employee, and the employee consulted with one of the union members. Taylor, 17 Pub. Employee Rep. (Ill.) par 3022, at XI--142.

We determine that Taylor is distinguishable. In Taylor, the employee was informed that the employer wanted him to take a "fitness for duty" drug test. Thus, the employee was aware of the subject matter of the investigation. Here, by contrast, Williams was not informed of the subject matter of the investigatory interview, and, during the initial questioning (which was in the nature of asking her if she knew why she was there), Williams repeatedly stated that she did not know why she was there. Taylor, then, does not offer guidance on the issue of whether Weingarten rights encompass a right to learn the subject matter of an investigatory interview beforehand.

We also find Pennsylvania State Corrections Officers to be distinguishable. In that case, the employer was investigating a possible ethics violation, based on the employee's reporting that he was injured on the job. When the investigatory interview was being scheduled, the employee was asked if he knew what it was about and he replied that he did. (The employee testified at the hearing that he thought his union representative had informed him of the subject matter beforehand; likewise, the union representative testified that he was aware of the subject matter even though he was not officially notified.) The employee and the union representative were given the opportunity to confer before the interview. During the interview, the employer asked the employee if he had injured his

back before the incident. The employee asked to confer with the union representative, and the employer denied the request and directed the employee to answer the question. The union representative asked for a break, and this request was also denied. The employer ordered the employee to answer the question, and the employee responded that his medical history was personal and confidential. The employer then granted a break to allow the employee and the representative to confer. At the end of the interview, the employee indicated that he had a prior work-related injury. The Pennsylvania Labor Relations Board (Board) determined that the employee's Weingarten rights had been honored initially, because the employee and the union representative had been given the opportunity to confer before the interview, and that whether they actually conferred was immaterial, because they were still afforded the opportunity. Notwithstanding the fact that the employer had allowed a pre-interview conference, the Board then determined that the employer's denial of a break to allow the employee and the representative to confer after the interview had commenced constituted an infringement of the employee's Weingarten rights and an unfair labor practice.

We distinguish Pennsylvania State Corrections Officers because, in that case, there was testimony that the employee and the union representative were allowed the opportunity to confer before the interview and that they were aware of the subject matter. Here, neither Williams nor Murray was informed of the subject matter before the interview commenced, and there is no indication that they were allowed to confer before the meeting. Indeed, a private discussion before the interview appears to have been impossible in this case, because Williams asked for union representation only after the interview had commenced. Accordingly, Pennsylvania State Corrections Officers appears to support the idea that a pre-interview conference between the employee and the union representative is one of the rights afforded under Weingarten, and we find

that it does not support the Tollway's argument. Having determined that the Tollway's authority is inapposite or supports the ILRB's ruling, we reject the Tollway's contention that Weingarten requires no advance notice of the subject matter of the investigatory interview, only that the employee and the union representative be allowed to confer.

In contrast to the Tollway's position and authority, the Union argues that the Weingarten rights include the right of the employee and the union representative to receive advance notice about the subject matter of the interview. In support, the Union cites to Pacific Telephone, American Postal Workers Union, Local No. 380, 345 N.L.R.B. 426 (2005) (American Postal Workers), and Hubbard v. Illinois State Labor Relations Board, 14 Pub. Employee Rep. (Ill.) par. 4004, No. 1--96--1722 (ILRB December 10, 1997) (hereinafter 14 Pub. Employee Rep. (Ill.) par. 4004). We have determined above that Pacific Telephone held that the Weingarten rights include the right to advance notice of the subject matter of an investigatory interview. In American Postal Workers, the employer denied the employee advance notice of the subject matter of the meeting. The NLRB held that this constituted a violation of the NLRA. American Postal Workers, 345 N.L.R.B. at 428 n.2. In addition, the NLRB noted that the right to union representation included the right to prior consultation. American Postal Workers, 345 N.L.R.B. at 436. The NLRB held that, by depriving the employee of the opportunity to confer with the union representative before the investigative interview, and by failing to inform the employee and the union representative of the subject matter of the investigative interview, the employer had contravened the employee's rights under Weingarten. American Postal Workers, 345 N.L.R.B. at 436-37.

In Hubbard, the ILRB held that Weingarten encompasses the employee's right to have "knowledgeable" union representation. In determining the meaning of "knowledgeable

representation," the ILRB noted that it does not mean that the representative must have training or experience in representing employees in disciplinary actions, but instead, it meant that the representative must be allowed to become familiar with the employee's circumstances. Hubbard, 14 Pub. Employee Rep. (Ill.) par. 4004, at XII--9. In other words, the union representative must be allowed to have a prior consultation with the employee (Hubbard, 14 Pub. Employee Rep. (Ill.) par. 4004, at XII--8 through XII--9, quoting Pacific Telephone, 262 N.L.R.B. at 1048-49 (union representative must have "prior consultation" with the employee in order to be able to assist the employee and the employer in the investigative interview)), and he must be familiar with the subject matter of the investigative interview (Hubbard, 14 Pub. Employee Rep. (Ill.) par. 4004, at XII--9, quoting United States Postal Service v. National Labor Review Board, 969 F.2d 1064, 1071 (D.C. Cir. 1992) ("The NLRB determined that the employee's Weingarten recognized right to the assistance of '[a] knowledgeable union representative,' [citation], sensibly means a representative familiar with the matter under investigation")). Thus, the authority relied upon by the Union endorses the employee's right to be given the subject matter of the investigative interview before the interview commences, if the employee makes that request.

Considering the lines of authority cited by the Union and the Tollway, we determine that the weight of authority greatly favors the Union. Pacific Telephone, American Postal Workers, and Hubbard all strongly and expressly endorse the Union's position regarding whether an employee's Weingarten rights include the right to advance notice. By contrast, the Tollway is able to point only to United States Postal Service, from which it infers that, because the Weingarten rights arise only at the time of the interview, logically, an employee has no right to advance notice of the subject matter of the interview. The remaining cases cited by the Tollway, as noted above, do not address

the issue of prior notice of the subject matter of the interview. Therefore, considering the parties' respective authority, we hold that the ILRB did not err in holding that Williams had a right to be informed of the subject matter of the investigatory interview before the interview commenced. Accordingly, we reject the Tollway's contrary argument regarding the scope of the Weingarten rights.

The Tollway next argues that the ILRB's decision is internally contradictory. The ILRB held that Williams' Weingarten rights were violated because neither she nor Murray received advance notice about the subject matter of the interview. According to the Tollway, however, neither Williams nor Murray requested to confer once Murray had joined the interview as Williams' union representative. The Tollway contends that, because the onus is on the employee to request the opportunity to confer with his or her union representative, and because an employee-representative conference at the beginning of the interview can substitute for advance notice, the ILRB incorrectly determined that the Tollway's failure to give advance notice compromised Murray's ability to give the aid and protection contemplated by Weingarten. In support, the Tollway cites to Taylor and International Brotherhood of Electrical Workers, Local 134, 16 Pub. Employee Rep. (Ill.) par. 3022, No. L--CA--99--063 (ILRB August 24, 2000) (hereinafter Fedanzo, 16 Pub. Employee Rep. (Ill.) par. 3022), for the proposition that the employer may provide advance notice about the subject matter of an investigative interview at the interview itself. We agree.

Our analysis of Pacific Telephone, American Postal Workers, and Hubbard reveals that, in each case, while the employee's right to receive advance notice was acknowledged, the employee or the union representative had also requested either advance notice or a conference. In Pacific Telephone, the union representative learned of the subject matter of the interview by attending the interview with the first employee, but was prevented from conferring with the second employee

before or at the start of the next interview. Pacific Telephone, 711 F.2d at 137. In American Postal Workers, 345 N.L.R.B. at 436-37, the NLRB linked the right to confer with the right to advance notice. In Hubbard, 14 Pub. Employee Rep. (Ill.) par. 4004, at XII--9, the ILRB rejected the employee's argument that he was denied advance notice, holding instead that "[t]here is no indication in the record that [the employee] would have been denied an opportunity to meet [his union representatives] prior to the investigatory interview." Thus, while the authority relied upon by the ILRB held that an employee's rights under Weingarten include the right to advance notice, that right must also be requested by the employee. In other words, if the employee does not request advance notice, then he or she runs the danger of forfeiting the right to receive advance notice.

Here, the ILRB held that it was Williams' or Murray's responsibility to request a chance to confer. Despite that holding, the ILRB also held that, by failing to provide advance notice to Williams or Murray, Williams was deprived of her right to knowledgeable union representation under Weingarten. In other words, the ILRB divorced the right to advance notice from the need to request it. Under the cases cited by the Union, this holding is clearly erroneous. In Pacific Telephone, American Postal Workers, and Hubbard, the right to advance notice was effected only by the employee's or the union representative's request. Here, the ILRB held that Williams and Murray had the responsibility to make a request, which they did not, but then it contradicted that holding by holding that, despite the lack of a request for advance notice, the Tollway's failure to voluntarily give them advance notice deprived Williams of her rights under Weingarten. Thus, in light of the request requirements in Pacific Telephone, American Postal Workers, and Hubbard, that holding was clearly erroneous.

The Tollway's citations to Taylor and Fedanzo support the idea that the employee must make a request or have the opportunity to make a request in order to trigger the Weingarten rights. As noted, in Taylor, the employee was summoned to the office and directed to take a "fitness for duty" test. The employee immediately requested union representation and requested a specific union officer to be his representative. That union officer was not available, and the union steward appeared to represent the employee. The two conferred and, thereafter, the manager reiterated his request that the employee undergo a "fitness for duty" test. The employee again refused, maintaining that he had not spoken to a union representative. The ILRB held that there was no Weingarten violation, because the employee was afforded representation upon his request as well as the opportunity to confer with the representative. Taylor, 17 Pub. Employee Rep. (Ill.) par. 3022, at XI--142. Thus, the employee acted to trigger his rights, and, even though the employee denied that he had consulted with a union representative, the record showed that he had been afforded that opportunity. As to the hypothetical issue of advance notice in Taylor, we note that, when the employee appeared at the front office, he was informed that he would be required to take a "fitness for duty" test. At that point he requested and received union representation, albeit not in the person he desired. The employee and the representative conferred before the meeting resumed. Taylor, 17 Pub. Employee Rep. (Ill.) par. 3022, at XI--141. Based on these facts, whether the employee was deprived of advance notice was not an issue, because the employee was informed of the subject matter of the interview, namely, taking a "fitness for duty" test, and he had the opportunity to and did confer with the representative before the interview began. Taylor, 17 Pub. Employee Rep. (Ill.) par. 3022, at XI--142. Here, by contrast, while Williams was not informed of the subject matter of her interview and continued to profess that she did not know why she was there even after the union representative had been

summoned, neither she nor Murray requested notice of the subject matter of the interview or asked to confer. Taylor holds that an employee must make a request to exercise his or her rights under Weingarten.

In Fedanzo, the employee was summoned to the employer's office without being given information about the subject matter of the interview. The employee, upon arriving, requested union representation, and the interview was suspended until the representative arrived. Fedanzo, 16 Pub. Employee Rep. (Ill.) par. 3022, at XI--121. When the representative arrived, the interview recommenced and the employee was told to leave and let the representative field the employer's questions. The interview was then postponed until another day. In ruling on whether the employee's Weingarten rights had been violated, the ILRB held that they had not, because the employee was afforded representation upon his request and the employer did not continue its investigation until the representative had arrived. Fedanzo, 16 Pub. Employee Rep. (Ill.) par. 3022, at XI--124. Regarding the hypothetical notice issue in Fedanzo, we note that the ILRB expressly held that the employer undertook no disciplinary action based on any information it gathered during the initial interview. Rather, it took action following the second and third interviews, during which the employee responded to the employer's inquiries. Fedanzo, 16 Pub. Employee Rep. (Ill.) par. 3022, at XI--125. Based on these facts, we can see that, even though the employee did not receive notice about the subject matter prior to the first interview, there was no information divulged to the employer on which it could act. Thus, any infringement of the employee's Weingarten rights was harmless. Given the time lapse between the first interview and the subsequent interviews, both the employee and the representative were aware of the subject matter of the employer's inquiry. Accordingly, the employee was, in fact, notified about the subject matter of the interview before any substantive

questioning and answering occurred. Here, by contrast, although Williams was not informed about the subject matter of her interview and she maintained throughout the interview that she did not know why she had been summoned, the record does not show that either she or Murray ever requested notice of the subject matter of the interview or to confer. Fedanzo, therefore, also supports the idea that the employer's voluntary provision of advance notice can serve to effect the employee's rights under Weingarten. The Union argues that the Tollway's failure to volunteer the subject matter of the interview before it commenced violated Williams' Weingarten rights. However, as we have seen, the employee must ask, and the record here is devoid of any evidence that either Williams or Murray made any requests whatsoever, related either to the right to confer or the right to advance notice. Because they did not make a request, the Tollway cannot be faulted for failing to volunteer the subject matter of the interview. (In further support of that conclusion, we note that Williams did not request union representation. Rather, Williams was asked by the Tollway if she wanted representation. However, Williams does not (and cannot) argue that the Tollway was required to offer her union representation. Thus, the ILRB's holding that it was Williams' and Murray's responsibility to request that Williams' rights under Weingarten be honored was not erroneous.) Accordingly, we cannot agree with the Union that the Tollway deprived Williams of any rights when Williams did not make a request to exercise those rights.

The Tollway next argues that the Union waived its full rights under Weingarten in its collective bargaining agreement with the Union. Because we have determined that the Weingarten rights include the right to advance notice about the subject matter of the interview, but only if the employee or the representative requests such notice, and because neither Williams nor Murray made a request either for advance notice or to confer, thereby failing to trigger the Tollway's obligation to

provide notice or a private conference, we need not address the Tollway's waiver-by-way-of-collective-bargaining-agreement argument.

For the foregoing reasons, the decision of the ILRB is set aside.

Set aside.

JORGENSEN and HUDSON, JJ., concur.